IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**CHINNA DUNIGAN**   **PLAINTIFF**

**V.**   **NO. 4:19-CV-33-DMB-JMV**

**MISSISSIPPI VALLEY STATE
UNIVERSITY; RENARDO HALL
(individual capacity)**   **DEFENDANTS**

## ORDER

Chinna Dunigan accepted the defendants' $20,000.00 offer of judgment to resolve her pregnancy discrimination and retaliation claims. She now seeks $107,949.00 in attorneys' fees and $3,331.86 in other costs. The defendants argue that Dunigan is not a prevailing party and that the attorneys' fees are unreasonable. Because the Court concludes that Dunigan is a prevailing party but that the attorneys' fees she seeks are unreasonable in some respects, Dunigan will be awarded a reasonable amount of attorneys' fees and other costs in accordance with this order.

### I
### Procedural History

On February 27, 2019, Chinna Dunigan filed a complaint against her employer, Mississippi Valley State University ("MVSU"), and her former supervisor at MVSU, Renardo Hall. Doc. #1. Dunigan asserted a Title VII pregnancy discrimination claim and a Title VII retaliation claim against MVSU, and a 42 U.S.C. § 1983 "sex and/or pregnancy" discrimination claim against Hall. *Id.* at PageID 12–13. In the complaint, Dunigan sought

> all remedies available, including but not limited to the following: (1) A final judgment declaring that the actions of Defendant described herein violate the law as alleged; (2) Back wages; (3) Reinstatement or front pay, as appropriate; (4) An injunction curing the violations alleged herein, and prohibiting any future similar violations; (5) Any other equitable relief as the court deems appropriate; (6) Compensatory damages for emotional distress and any other non-pecuniary harms

> flowing from the actions alleged herein; (7) Consequential damages and any other pecuniary harms flowing from the unlawful acts complained of herein; (8) Punitive damages commensurate with the misconduct and necessary to deter violations of the law; (9) Notice given to all employees regarding the violations found by this court, and notifying such employees of the order entered proscribing any future similar violations; (10) Pre and post judgment interest; (11) Attorney fees; (12) Costs; and (13) Any other relief available under any applicable principle in law or equity.

*Id.* at PageID 13–14 (cleaned up).

On October 26, 2020, the defendants served, and Dunigan accepted, an "Offer of Judgment" "in the amount of twenty thousand dollars and no/00 (i.e., $20,000), as to the Plaintiff, Chinna Dunigan, in complete satisfaction of all Plaintiff's claims." Docs. #171, #171-1. The next day, this Court, in addressing the parties' dispute about the language of the judgment to be entered, found that because "the defendants' offer was silent as to fees and costs[,] … Dunigan may seek to recover such amounts in addition to the accepted judgment amount." Doc. #173 at 3.

On October 29, 2020, Dunigan filed a "Rule 54(d) Motion for Plaintiff's Costs Including Attorney Fees," seeking $97,932.00 in attorneys' fees and $3,331.86 in other costs. Doc. #176 at 1. The defendants responded in opposition to the motion. Doc. #178. In her reply, Dunigan requests an additional $7,314.00 in attorney's fees for time expended on the reply. Doc. #180 at PageID 2212.

After a copy of Dunigan's attorney's retainer letter was served on the defendants pursuant to this Court's order,[1] the defendants, with the Court's leave,[2] supplemented their response on December 23, 2020. Doc. #186. In her reply to the supplement, Dunigan requests an additional $2,703.00 in attorney's fees for time expended on the supplemental reply. Doc. #187 at 11.

---

[1] *See* Docs. #184, #185.

[2] *See* Doc. #184 at n.1.

2

## II
## Analysis

Pursuant to 42 U.S.C. § 1988, reasonable attorney's fees may be awarded to prevailing parties in civil rights actions. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Section 1988 provides in relevant part:

> In any action or proceeding to enforce a provision of section 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, … the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ….

"[T]he discretion afforded district courts to deny attorney's fees to prevailing plaintiffs under § 1988 is exceedingly narrow." *Grisham v. City of Fort Worth*, 837 F.3d 564, 567 (5th Cir. 2016).

Dunigan seeks a total of $107,949.00 in attorneys' fees and $3,331.86 in other costs. The fees are based on a $318 hourly rate for "Lead Attorney and Senior Partner" Joel Dillard for 261 hours of work performed initially;[3] 23 hours of work on the reply brief;[4] and 8.5 hours of work on the supplemental reply.[5] They also include 4.5 hours of work by "Associate Attorney" Jay Kucia at an hourly rate of $200; 45.08 hours of work by "Fellow (law student)" Mary Kate Dugan; and 48.48 hours of work by "Fellow (law student)" Nicholas Stonecypher.[6] The defendants challenge the amount of attorneys' fees requested but not the remaining costs. Doc. #179 at 2–3. As to the fees, the defendants argue that (1) Dunigan is not a prevailing party and (2) the number of hours expended and the hourly rates are unreasonable. *Id.* at 7–22.

### A. Prevailing Party

The defendants first argue that Dunigan is not a "prevailing party" and thus should not be

---

[3] Doc. #176 at 1.

[4] Doc. #180 at PageID 2212–13.

[5] Doc. #187-2.

[6] Doc. #176 at 1.

allowed any award of attorneys' fees. Doc. #179 at 7–8. As Dunigan points out,[7] this argument is foreclosed by Fifth Circuit precedent.

When conducting a prevailing party analysis, courts must look to "whether there has been 'a material alteration of the legal relationship' between the parties." *Grisham*, 837 F.3d at 568 (quoting *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989)).

> A "material alteration" results when there is a judgment for damages in any amount, whether compensatory or nominal, because even a nominal award forces the defendant to pay an amount he otherwise would not pay. Such a change in the parties' relationship can be effectuated through an enforceable judgment or … a consent decree or settlement.

*Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 113 (1992)).

On October 27, 2020, a judgment was entered in Dunigan's favor against the defendants in the amount of $20,000. Doc. #174. Though the defendants argue Dunigan did not prevail or "carry the day" on the central issues of her claims, the entry of a judgment and an award of damages is precisely the type of "material alteration of the legal relationship" that is determinative. *See Genesis Marine, L.L.C. of Del. v. Hornbeck Offshore Servs., L.L.C.*, 951 F.3d 629, 631 (5th Cir. 2020) ("[A] judgment for damages in any amount … modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay.") (quoting *Farrar*, 506 U.S. at 113). The degree of a plaintiff's overall success does not decide the availability of a fee award but instead factors into the reasonableness of the award. *Sanchez v. City of Austin*, 774 F.3d 873, 881 (5th Cir. 2014) ("A prevailing plaintiff's degree of success is not a special circumstance that justifies a complete denial of § 1988 fees."). Accordingly, Dunigan is a prevailing party and as such is entitled to reasonable attorneys' fees. *See Joiner v. City of Columbus*, No. 1:14-cv-90, 2016 WL 55336, at *1 (N.D. Miss. Jan. 4, 2016)

---

[7] *See* Doc. #180 at PageID 2216–18.

4

(awarding attorney's fees under § 1988 to plaintiff as "prevailing party" who accepted Rule 68 offer of judgment).

### B. Reasonableness of Fees

In determining a reasonable attorney's fee award, "the district court should begin by calculating the lodestar: the reasonable hours expended multiplied by a reasonable rate. The district court may then determine whether any other considerations counsel in favor of enhancing or decreasing the lodestar." *Combs v. City of Huntington*, 829 F.3d 388, 394–95 (5th Cir. 2016). This includes consideration of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *Id.* at 392. The *Johnson* factors are:

> (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 257 n.3 (5th Cir. 2018).

### 1. Number of hours reasonably expended

In determining the number of hours reasonably expended, "the court should exclude all time that is excessive, duplicative, or inadequately documented." *Combs*, 829 F.3d at 392 (cleaned up). A court may also properly reduce the number of hours awarded if the documentation is incomplete or too vague to permit meaningful review. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

Dunigan submitted itemized statements and declarations detailing the number of hours expended in this case. *See* Docs. #176-2 to #176-5. The defendants submitted a line-by-line

5

analysis of the statements, and object to all but thirteen of the entries as either vague, excessive, duplicative, or supervisory. *See* Docs. #178-1 to #178-4.

### a. *Vague entries*

The Fifth Circuit has not precisely defined the appropriate standard for vagueness, instead leaving the district court with leeway to accept or reject fee applications where it deems the records "not illuminating as to the subject matter" or "vague as to precisely what was done." *La. Power & Light Co.*, 50 F.3d at 326. The burden is on the party requesting an award of fees to produce supporting documentation that allows the court to verify the party's entitlement to a specific award. *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010).

The defendants object on vagueness grounds to multiple entries with descriptions such as "conference with client," "discovery responses," "prepare for deposition," "Daubert mtn opposition drafting," "trial strategy," and "trial prep." *See* Doc. #178-1. Courts in this circuit have found similar entries sufficiently vague such that they may be accepted or rejected in a fee application. *See Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-913, 2005 WL 6789456, at *11 (N.D. Tex. Dec. 20, 2005) (finding "review file," "preparation of correspondence," "review correspondence," "phone conference with co-counsel," "legal research," and "review email" too vague to award fees), *aff'd*, No. 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007). However, Dillard's declaration submitted with the motion provides detailed explanations for many of these entries. *See* Doc. #176-2. For example, for the various entries regarding discovery responses, he identified each entry and explained the task completed and to which defendant the task pertained; explained the process of the mock trial conducted for the entries labeled "trial prep," "consultant group," and "mock trial;" and clarified how much time was spent on different tasks for certain motions. *See id.*

6

After reviewing each individual time entry, the Court finds the records submitted by Dunigan are not so vague as to preclude meaningful review of whether particular hours were reasonably expended. Even the few entries that contain no additional explanation (such as "review transcripts of statements," "read and review court orders," "motions in limine," and "review/draft affidavits") can be reviewed for their reasonableness based on the dates of entry, which indicate at what point in the case the task was completed, or based on the total number of hours spent on such tasks. *See Olibas v. Native Oilfield Servs., LLC*, 104 F. Supp. 3d 791, 811 (N.D. Tex. 2015). Accordingly, no reduction is warranted based on vagueness.

b. *Billing judgment and excessive entries*

"[P]laintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment." *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.*

Dillard's declaration identifies thirteen entries, totaling 25.75 hours, which he contends reflect an exercise in billing judgment as it reduced the number of hours originally sought by roughly ten percent. Doc. #176-2 at PageID 2082–83. Of the 25.75 hours excluded, 18.5 hours were devoted to unsuccessful or unpursued discovery efforts, most of which were made beyond the discovery deadline.[8] However, the removal of such entries does not demonstrate billing judgment because "plaintiffs do not have the right to bill … for time on issues which they [did] not prevail[ and they] cannot have prevailed on issues they did not pursue." *Walker v. U.S. Dep't*

---

[8] On December 26, 2019, the day before the discovery deadline, *see* Doc. #18 at PageID 100, eight hours were spent drafting a motion to extend the deadlines. *See* Doc. #176-2 at PageID 2082. The Court denied the motion. Dunigan re-urged the motion, Doc. #71, and then withdrew it, Doc. #79. Thus, it was both unsuccessful and not pursued. Regardless, the Court questions the reasonableness of spending eight hours drafting a motion for an extension.

*of Hous. & Urb. Dev.*, 99 F.3d 761, 769 (5th Cir. 1996) (citation omitted). The remaining 7.25 hours make up less than three percent of the hours accumulated by Dillard alone.

Dillard's declaration and timesheet also contain an assertion that "[a]s an exercise in billing judgment," he did not enter time for tasks taking less than ten minutes to complete and he did not bill for the time a fellow spent drafting discovery responses. Doc. #176-2 at PageID 2082–84. But billing judgment requires *documentation* of the hours written off. *Saizan*, 448 F.3d at 799. The Fifth Circuit has held that sworn statements similar to Dillard's were insufficient to meet a fee applicant's burden to demonstrate that it exercised billing judgment. *See Walker*, 99 F.3d at 769 ("[T]here is no record of any such billing judgment, as the plaintiffs allege that they wrote off hours before recording them.").

The defendants also question certain entries as excessive based on Dillard's "claim to be an 'experienced' trial attorney in this legal field." Doc. #179 at 2. Specifically, the defendants take issue with the 7.25 hours spent drafting the complaint; the 11.25 hours spent drafting an opposition to their *Daubert* motion; and the amount of time spent in connection to the pre-trial order.[9] *Id.* at 2, 13–14. Of note is the fact that the 11.25 hours spent drafting the opposition were billed consecutively from 7:45 a.m. to 7:00 p.m. Doc. #176-2 at PageID 2090. Similarly, two entries for Dunigan's opposition to the motions for summary judgment were billed consecutively for twenty hours.[10] *Id.* Such large amounts of uninterrupted time may be considered excessive

---

[9] The parties seem to blame one another for the amount of time spent on the pre-trial order. The defendants argue the lengthy conferences were caused by Dunigan's repeated attempts to amend her complaint to add additional claims and her "failure to timely submit pre-trial drafts to counsel and countless failures to adhere to court's admonishment regarding preparation for pre-trial information." Doc. #179 at 14. Dunigan argues the defendants caused the lengthy pre-trial conferences by refusing to include legitimate allegations she made and failing to adequately describe the factual or legal disputes in the draft to be submitted such that Dunigan had to submit a separate draft. Doc. #180 at PageID 2232; Doc. #180-1 at PageID 2239.

[10] Though Dunigan deducted the 2.5 hours of work performed on the second day, *see* Doc. #176-2 at PageID 2083, the Court still questions 17.5 hours of consecutive work.

8

and suggest a lack of billing judgment.

"When there is no or scanty evidence of billing judgment, the proper remedy is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Lalla v. City of New Orleans*, 161 F. Supp. 2d 686, 706–07 (E.D. La. 2001) (cleaned up) (quoting *Walker*, 99 F.3d at 770). Considering the entries described above, Dunigan's billing judgment appears minimal at best and thus a reduction is warranted.

### c. Mock trial

Though Dunigan indicates the mock trial/consultant group presentations were limited to just a few hours on two afternoons,[11] regarding these tasks, Dillard expended 17.75 hours, Dugan expended approximately 35 hours, and Stonecypher expended approximately 42 hours.[12] The defendants object to all time expended as unreasonable. Doc. #179 at 18, 21–22.

The parties do not cite, and the Court has not found, any Fifth Circuit authority examining whether the time allocated to mock trials or consultant groups are recoverable as attorney's fees. In other jurisdictions, "[c]ourts refuse to draw a firm line concerning the reasonableness of attorney fees for mock trials, moot courts, and other preparation techniques, instead analyzing the reasonableness in the context of the particular cases." *Lemus v. Timberland Apartments, L.L.C.*, 876 F. Supp. 2d 1169, 1180 (D. Or. 2012) (collecting cases). "Time devoted to exercises such as these generally is deemed compensable so long as the number of hours is reasonable." *Harvey v. Mohammed*, 951 F. Supp. 2d 47, 64 (D.D.C. 2013).

As to the hours reasonably expended on mock trial tasks, the parties disagree about the

---

[11] Doc. #180 at PageID 2228.

[12] The law students "craft[ed] opening and closing statements" and presented them for the mock trial. *See* Doc. #180 at PageID 2227–28.

9

complexity of the case.[13] The defendants argue this was a simple, straightforward case presenting "no novel fact pattern or legal theory of recovery," and "involv[ing] one plaintiff, alleging Title VII violations and 14th Amendment violations based upon the same conduct," "a minimum [sic] number of witnesses," and "three deponents whose testimony was offered in support of the Defendants' dispositive motions." Doc. #179 at 16–18. Relying on *Ravina v. Columbia University*, No. 16-CV-2137, 2020 WL 1080780 (S.D.N.Y. Mar. 6, 2020), Dunigan asserts the mock trial was necessary to "assess the interplay between potentially conflicting theories of sex harassment, pregnancy discrimination and retaliation" which could "only be explored effectively by presenting certain elements of the case to a mock jury and seeing how they react in deliberations." Doc. #180 at PageID 2229.

In *Ravina*, the court awarded $100,000 of the $356,000 originally sought for conducting a mock trial with jury consultants in a sex harassment and retaliation case. 2020 WL 1080780, at *14–15. Dunigan argues the much smaller amount requested for the focus group in this case is "clearly reasonable" if $100,000 was reasonable in *Ravina*. Doc. #180 at PageID 2228. However, there are factual differences between this case and *Ravina*. *Ravina* concerned a 15-day trial and the $100,000 award was not only for a jury focus group before trial but included other trial support services such as "help[ing] to select the jury and provid[ing] guidance based on juror observations, assist[ing] with the visual display of evidence, and develop[ing] and present[ing] trial graphics." 2020 WL 1080780, at *14. This case, the trial of which was estimated to last only three days,[14] did not proceed to trial. And there were no additional trial support services as in *Ravina*. For these

---

[13] Though the parties only discuss complexity of the case, other courts have considered the number of lawyers staffing the case, the imminency of the trial, and whether the exercise helped produce a favorable result. *See, e.g.*, *Rodriguez v. City of Houston*, No. 06-2650, 2009 WL 10679670, at *2 (S.D. Tex. Dec. 22, 2009) (number of lawyers); *Lewis v. Heartland Inns of Am., L.L.C.*, 764 F. Supp. 2d 1037, 1049 (S.D. Iowa 2011) (imminency of trial); *Sigley v. Kuhn*, 205 F.3d 1341, 2000 WL 145187, at *9 (6th Cir. 2000) (unpublished table decision) (favorable result).

[14] *See* Doc. #18.

10

reasons, the Court finds this case was not so complex as to warrant the approximately 95 hours expended on preparing for and conducting mock trial/consultant group presentations, of which roughly 77 hours were those of the law students. *See Alvarez v. McCarthy*, No. 6-16-CV-172, 2020 WL 1677715, at *5 (W.D. Tex. Apr. 6, 2020) ("The Court will exclude the roughly $35,893.60 in time and costs Plaintiffs expended on a focus group for this straightforward employment case."). The Court will reduce the amount of hours such that 5 hours will be allowed for Dillard, 8 hours will be allowed for Dugan, and 10 hours will be allowed for Stonecypher.

### d. Law students

The defendants challenge the hours[15] for the work of the two law students,[16] Stonecypher and Dugan. Doc. #179 at 20–22. The defendants argue there is no legal authority for the proposition that attorney's fees should be awarded for law students who are unauthorized to practice law and that the tasks performed by the law students here were administrative. *Id.*

> Clearly, a "reasonable attorney's fee" cannot have been meant to compensate only work performed personally by members of the bar. Rather, the term must refer to a reasonable fee for the work product of an attorney. … [T]he 'reasonable attorney's fee' provided for by [42 U.S.C. § 1988] should compensate the work of paralegals [and law clerks], as well as that of attorneys."

*Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989) (referring to work of law clerks and paralegals collectively as "paralegals"). "Paralegal expense is recoverable only to the extent that the work performed is similar to that typically performed by lawyers." *Coleman v. Hous. Indep. Sch. Dist.*, 202 F.3d 264, 1999 WL 1131554, at *9 (5th Cir. 1999) (unpublished table decision). Courts in this circuit have found that tasks such as redacting and assembling exhibits are

---

[15] Dugan's timesheet indicates a total of 45.08 hours but the total is actually 44.9 hours. *See* Doc. #176-5 at PageID 2102.

[16] Throughout her briefing, Dunigan refers to Dugan and Stonecypher as fellows, law students, and paralegals. *See* Docs. #176 at 1, #180 at PageID 2227.

11

considered clerical or administrative in nature and thus are non-compensable. *See West v. Zedric's LLC*, No. 19-CV-556, 2019 WL 6522828, at *5 (W.D. Tex. Dec. 3, 2019) (collecting cases).

Like paralegals, the law students in this case were unauthorized to practice law but performed some work similar to work performed by lawyers, such as drafting opening and closing statements. The only time entries the Court deems non-compensable and "administrative" in nature are those regarding exhibits because such tasks are not traditionally performed by an attorney. Accordingly, while the law students' work is compensable, Dugan's time will be reduced by 7.53 hours and Stonecypher's time will be reduced by 3.45 hours for work allocated to exhibits.

### e. Kucia

Kucia performed a total of 4.5 hours of work in this case. *See* Doc. #176-3. The defendants argue the Court should disallow all of Kucia's fees because the two hours he spent attending a telephonic conference are duplicative, his legal experience is limited, and he "contributed exactly nothing towards the conclusion of this matter." Doc. #179 at 20.

The Court agrees Kucia's time allocated to attending the settlement conference is duplicative because Dunigan charged time for Dillard attending the same conference. *See* Doc. #176-2 at PageID 2092. Further, as the defendants note,[17] Kucia was admitted to practice law just six days before Dunigan accepted the offer of judgment. Doc. #176-3 at PageID 2093. And Kucia never formally appeared in the case. Although the Court has previously reduced an attorney's hours to zero in similar circumstances,[18] this Court finds the more equitable remedy is to compensate Kucia's work at the same rate as the law students. Therefore, Kucia's hours will be reduced to 2.5 and awarded at the same reasonable rate of the law students discussed below.

---

[17] Doc. #179 at 20.

[18] *See Joiner*, 2016 WL 55336 at *3.

### f. *Post-judgment compensation for fee dispute*

For work completed after acceptance of the offer of judgment, Dillard submitted 41.75 hours[19] and Kucia submitted 2.5 hours.[20] The defendants object to fees for all post-judgment work on Dunigan's behalf. *See* Docs. #178-1 at PageID 2175–76, #178-2.

"[A]ttorney's fees may be awarded for time spent litigating the fee claim." *Johnson v. State of Miss.*, 606 F.2d 635, 638 (5th Cir. 1979); *see Volk v. Gonzalez*, 262 F.3d 528, 536 (5th Cir. 2001) ("[I]t is well settled that fees-on-fees are recoverable under § 1988."). Thus, the post-judgment work by Dillard and Kucia on the motion for attorneys' fees, and the reply in support, are deemed reasonable. However, because the Court will not award fees incurred for Dunigan's supplemental briefing on the motion, since such was associated with Dunigan's erroneous characterization of the retainer letter as confidential, *see* Doc. #184, Dillard's time will be reduced by 8.5 hours.

### g. *Conclusion*

In reviewing the billing entries, the Court is mindful that "trial courts need not, and indeed should not, become green-eyeshade accountants" as "[t]he essential goal in shifting fees … is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 829, 838 (2011). Based on the analysis above, Dillard's total hours are reduced to 271.25, Kucia's hours are reduced to 2.5, Dugan's hours are reduced to 10.37, and Stonecypher's hours are reduced to 13.03. Additionally, the Court will apply a 20% reduction to the lodestar to account for the lack of billing judgment.[21] *See, e.g., Walker*, 99 F.3d at 770 (reducing requested fees by 15% "to substitute for

---

[19] *See* Doc. #180-1 at PageID 2249–50 (33.25 hours); Doc. #187-2 at PageID 2305 (8.5 hours).

[20] *See* Doc. #176-3 at PageID 2096.

[21] In addition to the billing judgment discussion above, the Court also considered the small amount of time billed for travel at full cost and an item not pursued. *See* Doc. #176-2 at PageID 2091 (time entered on July 7 and 8 for preparing

13

the exercise of billing judgment"); *Saizan*, 448 F.3d at 800 (affirming 10% fee reduction for failure to provide evidence of billing judgment); *Hopwood v. State of Tex.*, 236 F.3d 256, 279 (5th Cir. 2000) (affirming 25% reduction for lack of billing judgment and vague and duplicative work).

### 2. Reasonableness of hourly rate

#### a. Dillard

Dunigan requests an hourly rate of $318 for Dillard's work based on his roughly thirteen years of experience and "customary billing rate." Doc. #176 at 1; Doc. #176-2 at PageID 2079. The defendants argue that Dillard "simply pulled from the air his hourly rate of $318" and that such a rate cannot be supported since Dunigan had not submitted affidavits of other practicing attorneys to establish the market rate in the legal community or offered the employment contract or any other documentation establishing Dillard's customary hourly fee. Doc. #179 at 9–10. In reply, Dunigan submitted declarations of three Mississippi attorneys who attest to the reasonableness of Dillard's rate. *See* Docs. #180-2, #180-3, #180-4. Dunigan also submitted a supplemental declaration of Dillard as to the fee arrangement[22] in this case. *See* Doc. #180-1 at PageID 2238.

"'Reasonable' hourly rates are to be calculated according to the prevailing market rates in the relevant community." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (cleaned up). "[T]he burden is on the applicant to produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* "When an attorney's customary

---

for travel, preparing for the pre-trial conference, and traveling to the pre-trial conference); *id.* at PageID 2092 (time on October 26 allocated to an amended complaint which was never pursued).

[22] Because the retainer letter purporting to represent the fee arrangement is not signed by Dunigan, it does not conclusively establish Dunigan's agreement to the hourly rate. *See* Doc. #187-1 at PageID 2302.

billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed." *La. Power & Light Co.*, 50 F.3d at 328.

This Court has previously approved "a $385 hourly rate for … an attorney with twenty years of experience, [and] a $285 hourly rate for … an attorney with four years of experience." *Mass. Mut. Life Ins. Co. v. Williamson*, No. 4:15-cv-166, at Doc. #132 (N.D. Miss. Jan. 10, 2020). As Dillard's hourly rate is supported by the declarations and falls within the range of prevailing market rates previously approved by this Court,[23] the Court concludes it is reasonable.

### b. Law students and Kucia

Dunigan requests an hourly rate of $150 for the work completed by Stonecypher and Dugan, arguing that their work is "compensable at (at least) the standard paralegal rate of approximately $150 per hour." Doc. #177 at PageID 2121. The defendants argue that "[t]here is no legal or factual basis for awarding Plaintiff any 'attorney fees' for a law student" at the requested rate. Doc. #179 at 21–22.

Courts in this district have generally awarded fees for work completed by paralegals at hourly rates under $100. *See Griggs v. Chickasaw Cnty.*, No. 1:16-CV-13, 2020 WL 853532, at *3 (N.D. Miss. Feb. 20, 2020) ($65 hourly rate for paralegal work); *Great Am. Life Ins. Co. v. Tanner*, No. 3:16-CV-70, 2017 WL 3396403, at *2 (N.D. Miss. Aug. 7, 2017) ($65 hourly rate for paralegal); *Hendrix v. Evergreen Hauling*, No. 1:18-CV-114, 2019 WL 138160 (N.D. Miss. Jan. 8, 2019) ($85 hourly rate for paralegal). In support of the requested higher rate, Dunigan cites *Massachusetts Mutual Life Insurance Company v. Williamson*, in which this Court approved an

---

[23] "[T]rial courts are considered experts as to the reasonableness of attorney's fees …." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

15

*uncontested* $150 hourly rate for the work of a paralegal. No. 4:15-cv-166, at Doc. #132 at 2. But the Court noted that although the rates in that case were on the high end, they were reasonable "given the experience of the legal professionals involved." *Id.* Here, at the time the work was performed, Stonecypher was a third-year law student and Dugan was a second-year law student. *See* Doc. #176-4 at PageID 2097; Doc. #176-5 at PageID 2100. Such limited legal experience cannot be said to support the high hourly rate of $150; instead, the rate will be reduced to $100. For the reasons explained above, this will also be Kucia's allowed hourly rate.

### 3. *Johnson* factors

"There is a strong presumption of the reasonableness of the lodestar amount. However, … a district court may enhance or decrease the amount of attorney's fees based on [the *Johnson* factors]." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). But "[t]he lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar." *Id.* Thus, in determining whether further adjustment is warranted in this case, the Court considers (1) whether the fee was fixed or contingent and (2) the amount involved and the results obtained.[24]

#### a. Fixed or contingent fee

The only documentation of the fee arrangement between Dunigan and her counsel is the retainer letter Dunigan served on the defendants pursuant to this Court's order[25] and submitted with her supplemental reply. The letter provides in relevant part:

---

[24] In determining the number of hours reasonably expended, the Court previously considered the time and labor required, the novelty and difficulty of the case, and time limitations. Similarly, in determining the reasonable hourly rates, the Court considered the skill requisite to perform the legal service properly, the customary fee, and the experience, reputation, and ability of the attorneys. The parties do not argue that the preclusion of other employment, the undesirability of the case, the nature and length of the professional relationship with the client, or the awards in similar cases warrant a modification in this case.

[25] Doc. #184.

16

> Fees will be hourly at $318 per hour, and will be paid at the successful conclusion of the case. Court and litigation costs such as filing fees, expert witnesses, travel expenses, and depositions will be paid by you as we go. A retainer of $1,000 is owed for costs, and will be refreshed as it is depleted. In addition to the hourly rate, a contingency attorney fee of 25% of any settlement will be paid if the case settles before summary judgment, and 35% of any moneys recovered by any means thereafter.

Doc. #187-1 at PageID 2302. The defendants argue that (1) the retainer letter is not a valid contract for legal representation; (2) the claimed fee is not "reasonable" within the meaning of the Mississippi Rules of Professional Conduct; and (3) Dunigan's counsel "should be allowed only *quantum meruit* recovery of his contingency percentage from the $20,000 Judgment." Doc. #186 at 3–7. Dunigan counters that (1) the fee agreement is not relevant to determining the amount of the fee award; (2) the defendants' contract arguments are a red herring; (3) *quantum meruit* incorporates the same lodestar analysis; and (4) there is a valid contract. Doc. #187 at 2–9.

Dunigan is correct that, even if "there were no enforceable fee contract," a *quantum meruit* recovery leads right back to the lodestar calculation. Doc. #187 at 7; *see Tupelo Redevelopment Agency v. Gray Corp., Inc.*, 972 So. 2d 495, 520–21 (Miss. 2007) (applying lodestar method to determine attorney's fees in absence of a written contract).[26] Because the reasonableness of fees awarded under a *quantum meruit* theory would result in the same lodestar analysis, the Court need not determine the validity of the contract.[27]

To the extent the defendants argue the fee award should be limited to the contingency percentages set forth in the retainer document,[28] such limitation is foreclosed by United States

---

[26] Although Mississippi courts calculate the lodestar under factors set out in Rule 1.5 of the Mississippi Rules of Professional Conduct, the only *Johnson* factor "which is not included in Rule 1.5, in some shape, form or fashion, is the undesirability of the case." *Tupelo Redevelopment Agency*, 972 So. 2d at 521 (internal quotation marks omitted).

[27] Dunigan also argues that the defendants "are not party to the contract and lack standing to challenge it" as there is no fee dispute between Dunigan and her counsel. Doc. #187 at 6–7.

[28] *See* Doc. #186 at 9.

Supreme Court precedent. As explained in *Venegas v. Mitchell*:

> Section 1988 makes the prevailing *party* eligible for a discretionary award of attorney's fees. Because it is the party, rather than the lawyer, who is so eligible, we have consistently maintained that fees may be awarded under § 1988 even to those plaintiffs who did not need them to maintain their litigation, either because they were fortunate enough to be able to retain counsel on a fee-paying basis, or because they were represented free of charge by nonprofit legal aid organizations.
>
> ….
>
> In sum, § 1988 controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer. What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the "reasonable attorney's fee" that a defendant must pay pursuant to a court order.

495 U.S. 82, 87–90 (1990) (citations omitted). While the contingency fee is a factor in determining reasonableness, the "centerpiece" to such determination, and ultimately the award amount, is the lodestar estimate. *Blanchard v. Bergeron*, 489 U.S. 87, 94–95 (1989) (holding that a fee award under § 1988 should not be capped by a contingent fee agreement between the attorney and his client).

Whether the fee is fixed or contingent is "helpful in demonstrating the attorney's fee expectations when he accepted the case." *Johnson*, 488 F.2d at 718. After considering the contingent nature of the fee here, the Court finds that no adjustment in this regard is warranted.

b.  *Amount involved and results obtained*

"'[T]he amount involved and the results obtained,' indicates that the level of a plaintiff's success is relevant to the amount of fees to be awarded." *Hensley*, 461 U.S. at 430. Indeed, "the most critical factor in determining the reasonableness of a fee award … is the degree of success obtained." *Combs*, 829 F.3d at 397 (internal quotation marks omitted); *Black*, 732 F.3d at 503. "[I]n a private civil rights suit, a district court must consider any disparity between the amount of damages sought and the amount of damages awarded." *Combs*, 829 F.3d at 395–96. While there

18

is no "*per se* proportionality requirement" when awarding attorney's fees, "[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986); *see Combs*, 829 F.3d at 395–98 ("The district court properly recognized that proportionality between attorney's fees and damages may be considered in determining a reasonable fee.").

In her complaint, Dunigan sought an unspecified amount of back wages, reinstatement or front pay, an injunction, compensatory damages for emotional distress, consequential damages, and punitive damages. Doc. #1 at PageID 14. She argues the amount won was comparable to that sought because she "obtained the core of what she sought in this litigation: a judgment on the merits vindicating her claims, and a modest five-figure award roughly in line with her economic damages." Doc. #180 at PageID 2222. However, "[w]here recovery of private damages is the purpose of … civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Migis v. Pearle Vision Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998) (quoting *Farrar*, 506 U.S. at 114).

The defendants argue that, although trial was less than twenty days away, Dunigan was "unable to provide the qualitative calculations of [her] alleged damages."[29] Doc. #179 at 16. Dunigan contends that she "never sought more than - at most - $31,400 in economic damages, and non-economic damages were uncertain and unspecified." Doc. #180 at PageID 2222–23. Because nothing has been submitted to the Court indicating the total amount of damages Dunigan sought,

---

[29] When asked through interrogatories to "give a full and complete account of all damages … you seek to recover," Dunigan objected to such questions as "premature contention interrogator[ies]" and did not provide an answer. Doc. #98-1 at PageID 755, 772. She similarly objected to the request for production seeking documents supporting the claim for damages and an itemization of the amount by stating that "[a] Rule 34 Request cannot be used to create a new document such as an 'itemization of amounts'" and that she already produced documents in her possession. *Id.* at PageID 794, 803. The defendants have provided nothing indicating that they ever challenged these objections or ever sought to compel Dunigan to provide qualitative calculations.

19

the Court is unable to compare the amount sought with the $20,000 judgment received. Accordingly, further modification of the award cannot be justified.

### 4. Fee calculation

Based on Dillard's 271.25 hours of work at a $318 hourly rate, Kucia's 2.5 hours of work at a $100 hourly rate, Dugan's 10.37 hours of work at a $100 hourly rate, and Stonecypher's 13.03 hours of work at a $100 hourly rate, the Court derives a $88,847.50 lodestar amount. Applying the twenty percent reduction, the Court arrives at an award of $71,078.00.

### III
### Conclusion

Dunigan's motion for costs, including attorneys' fees [176] is **GRANTED in Part and DENIED in Part**. It is GRANTED to the extent Dunigan is awarded attorneys' fees in the amount of $71,078.00 and other costs in the amount of $3,331.86. It is DENIED in all other respects.

**SO ORDERED**, this 24th day of September, 2021.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**